IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL CALVIN WANLESS,

             Petitioner,                  No. 2:10-cv-2243 WBS KJN P

    vs.

R.E. BARNES, Warden,

             Respondent.          FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2007 conviction on charges of possession of methamphetamine for purpose of sale, and the finding that petitioner committed the crime while released on bail, after suffering 14 prior serious felony convictions, and serving three prior prison terms.  (Clerk's Transcript ("CT") at 393.)  Petitioner was sentenced to 25 years to life in prison, plus two years for the prior prison terms.  Petitioner alleges claims of ineffective assistance of counsel, and one claim alleging cumulative error.  After careful review of the record, this court recommends that the petition be denied.

////

////

1

II.  <u>Procedural History</u>

Petitioner filed a timely appeal to the California Court of Appeal, Third Appellate District.  The judgment was affirmed by the Court of Appeal on February 4, 2009.  (Dkt. No. 1 at 33.)  Petitioner filed a petition for review in the California Supreme Court.  (Respondent's Lodged Document ("LD") D.)  The California Supreme Court denied review on May 13, 2009. (Dkt. No. 1 at 32.)

On September 21, 2009, petitioner filed a petition for writ of habeas corpus in the Shasta County Superior Court.  (LD E.)    On October 22, 2009, the Shasta County Superior Court denied the petition in a reasoned decision.  (LD F.)

On November 12, 2009, petitioner filed a petition for writ of habeas corpus in the California Court of Appeals, Third Appellate District.  (LD G.)  On November 19, 2009, the Court of Appeals denied the petition without comment.  (LD H.)

On December 9, 2009, petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (LD I.)  On July 14, 2010, the petition was denied by the California Supreme Court, without comment.  (LD J.)

Petitioner filed the instant petition on August 20, 2010.  (Dkt. No. 1.)

III.  <u>Facts</u>[1]

The opinion of the California Court of Appeal contains the following factual summary of petitioner's offenses.

Parole Agent Larry Welch received a telephone call from Deputy Sheriff Wes Collette wanting [petitioner's] address because [petitioner] was a suspect in a bank robbery.  Welch determined that [petitioner] was not on parole.

The following morning, Welch and Agent Dianna Day went to a motel room to arrest a parolee named Jeffrey Hankins and to search his room because he had recently tested positive for methamphetamine.  When Hankins opened the door, Welch saw

_____

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Wanless, No. C057176 (February 4, 2009).  (Dkt. No. 1 at 33.)

2

1          there were four people in the room -- Hankins, his wife, and two
           adult males, one whom was later determined to be [petitioner].
2
               [Petitioner] got up from the side of the bed where he had been
3          sitting, said he was a "prior parolee," claimed Welch knew him,
           and stated he wanted to leave.  Welch, not having "a clue" who
4          [petitioner] was, requested his name and identification.
           [Petitioner] gave his name, which Welch recognized as the name of
5          the robbery suspect about whom Deputy Collette inquired.  Welch
           told [petitioner] he could not leave until he was identified.
6          [Petitioner] became upset and repeatedly put his hands in and out
           of his pockets, even though Welch told him to keep them in plain
7          view.  Eventually, [petitioner] said he had a knife and gave it to
           Welch.
8
               A hypodermic needle was found near the bed in the area where
9          [petitioner] had been sitting, and he was arrested.  [Petitioner] was
           searched, and 12 baggies containing methamphetamine were found
10         on him.

11  (People v. Wanless, Dkt. No. 1 at 33-34.)

12  IV.  Standards for a Writ of Habeas Corpus

13          An application for a writ of habeas corpus by a person in custody under a

14  judgment of a state court can be granted only for violations of the Constitution or laws of the

15  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

16  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

17  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

18          Federal habeas corpus relief is not available for any claim decided on the merits in

19  state court proceedings unless the state court's adjudication of the claim:

20          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
21          determined by the Supreme Court of the United States; or

22          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
23          State court proceeding.

24  28 U.S.C. § 2254(d).

25          Under section 2254(d)(1), a state court decision is "contrary to" clearly

26  established United States Supreme Court precedents if it applies a rule that contradicts the

3

1   governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

2   indistinguishable from a decision of the Supreme Court and yet arrives at a different result.  Early

3   v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

4           Under the "unreasonable application" clause of section 2254(d)(1), a federal

5   habeas court may grant the writ if the state court identifies the correct governing legal principle

6   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

7   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

8   simply because that court concludes in its independent judgment that the relevant state-court

9   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

10  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

11  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

12  question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

13  omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

14  so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

15  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

16          The court looks to the last reasoned state court decision as the basis for the state

17  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

18  decision, "and the state court has denied relief, it may be presumed that the state court

19  adjudicated the claim on the merits in the absence of any indication or state-law procedural

20  principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

21  overcome by a showing that "there is reason to think some other explanation for the state court's

22  decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

23  V.  Background re Motion to Suppress

24          At trial, petitioner filed a motion to suppress, claiming he had been unlawfully

25  detained, and that the warrantless arrest and search violated the Fourth Amendment.  (CT at 64-

26  68.)  The Shasta County Superior Court denied the motion to suppress and found that petitioner

1  was lawfully detained by Parole Agents Welch and Day.  (Reporter's Transcript ("RT") at 143-

2  46.)  After petitioner was convicted, he filed a motion for new trial, claiming ineffective

3  assistance of trial counsel based on counsel's failure to obtain impeachment evidence.

4  Specifically, petitioner argued that the failure to obtain Parole Agent Day's parole records

5  referencing petitioner, deprived petitioner of an opportunity to impeach Day's testimony that she

6  did not know petitioner and that petitioner was not assigned to Day's caseload.  Petitioner

7  contended that this impeachment evidence would have allowed petitioner to call into question

8  Day's testimony as to other facts, including petitioner's actions.  (CT at 353-54.)  The Shasta

9  County Superior Court denied the motion for new trial, and found that petitioner's detention was

10 justified by officer safety.  (RT at 530.)

11          In his appeal, petitioner again claimed he was illegally detained, and that the

12 motion to suppress was denied in error.  (Dkt. No. 1 at 33.)  The Court of Appeals addressed this

13 claim as follows:

14          [Petitioner] contends the search and seizure were the product of
            an unlawful detention and, thus, the trial court erred in denying
15          [petitioner's] motion to suppress evidence.  We disagree.
            . . .
16
            Citing *People v. Harvey* (1958) 156 Cal.App.2d 516 (hereafter
17          *Harvey*), and *People v. Madden* (1970) 2 Cal.3d 1017 (hereafter
            *Madden*), [petitioner] contends the information provided by
18          Deputy Collette to Agent Welch -- that [petitioner] was a suspect
            in a bank robbery -- cannot be considered in determining whether
19          the detention was lawful.  *Harvey* and *Madden* "require that when
            the first officer passes off information through 'official channels'
20          that leads to arrest, the officer must also show [the] basis for his
            probable cause.  In other words, the so-called '*Harvey-Madden*
21          rule' requires the basis for the first officer's probable cause must be
            'something other than the imagination of an officer who does not
22          become a witness.'"  (*People v. Ramirez* (1997) 59 Cal.App.4th
            1548, 1553; *People v. Lazanis* (1989) 209 Cal.App.3d 49, 61
23          [*Harvey-Madden* rule applies to detentions as well as to arrests] .)
            FN1
24
                    FN1. In the trial court, [petitioner] raised a
25                  *Harvey-Madden* objection in his written suppression
                    motion, again during the presentation of evidence,
26                  and again at argument.

5

In his view, absent that evidence (since Deputy Collette did not testify), Agent Welch lacked reasonable cause to detain [petitioner].  This is so, he claims, because there was "no objective basis for a suspicion that he was involved in criminal activity."

The trial court ruled that even without consideration of the evidence challenged based on the *Harvey-Madden* rule, the detention was appropriate for officer safety.  We agree.

"When, in the course of initiating a search under warrant of a private residence for illegal drugs or related items, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot immediately be determined without detaining the person, the officers may constitutionally detain him or her for the period of time required and in the manner necessary to make those determinations and to protect the safety of all present during the detention.  If the person is determined to be an occupant of the home to be searched [meaning resident], he or she may be detained, pursuant to [*Michigan v. Summers* (1981) 452 U.S. 692 [69 L.Ed.2d 340]], for the duration of the search.  [Citation.]  If the person is determined not to be an occupant, further detention is proper only if justified by other specific, articulable facts connecting him or her to the criminal activity suspected to be occurring on the premises or establishing a danger to the officers if the person is released." (*People v. Glaser* (1995) 11 Cal.4th 354, 374 (hereafter *Glaser*).)

Agents Welch and Day had probable cause to arrest Hankins, and to search the motel room he occupied, because of his parole status and the fact that he had recently tested positive for methamphetamine.  [Petitioner] does not claim otherwise.  When they unexpectedly encountered [petitioner] and another male there, they did not know the relationship of either man to Hankins or to the motel room.  Thus, [petitioner's] initial detention for the officers to make these determinations was appropriate.  (*Glaser*, *supra*, 11 Cal.4th at p. 374.)

[Petitioner] argues that once the agents were satisfied that [petitioner] was who he claimed to be, that he was not on parole, and that he was only a visitor to, not an occupant of, the room, they should have permitted him to leave as he had requested.  We are not persuaded.

"'In the narcotics business, "firearms are as much 'tools of the trade' as are most commonly recognized articles of narcotics paraphernalia."' [Citation.]"  (*Glaser, supra*, 11 Cal.4th at p. 367.) "The police are not required to ignore the danger that persons possibly involved in crime, who leave the premises, may return during the search, with potentially fatal consequences for themselves or the officers."  (*Id.* at p. 373.)

6

Because Welch and Day had probable cause to believe that Hankins was involved with drugs, they also had reason to fear there may be firearms secreted in the room or nearby available to the occupants. This fear was bolstered by the officers knowing that Hankins was a parolee and that [petitioner] had been a parolee, meaning each had been convicted of at least one felony offense and had served a prison sentence. Consequently, [petitioner's] continued detention was permissible based on the officers' concerns for their safety.

[Petitioner] attempts to distinguish the situation in *Glaser* from his. He observes that *Glaser* involved the service of a search warrant which was issued by "a neutral magistrate rather than an officer in the field [having] made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home" and because the "search here did not occur on a proverbial 'dark and stormy night,'" as was the case in *Glaser*. The distinctions are immaterial; the critical point is that Hankins's positive methamphetamine tests and his being on parole provided probable cause to arrest him and to search his room; as previously noted, [petitioner] does not claim otherwise. Nor does [petitioner] provide any reason to believe a search of a residence conducted on a dark and stormy night by several officers is more dangerous than a search conducted in the morning of a sunny day by two officers confronted with a female and three males, two of whom are known felons.

[Petitioner] also claims his detention was unduly prolonged because Agents Welch and Day "had no justification for prolonging [his] detention after receiving [his] driver's license." However, for reasons explained above, [petitioner's] continued detention was just for the officers' safety.

(People v. Wanless, Dkt. No. 1 at 33-38.)

VI. Alleged Ineffective Assistance of Counsel Claims

Petitioner claims that he suffered ineffective assistance of trial counsel based on trial counsel's alleged failure to prepare to represent petitioner at the hearing on the motion to suppress, and based on the failure of defense counsel appointed to present a motion for new trial to investigate and proffer evidence in support of the motion for new trial. Finally, petitioner claims appellate counsel was ineffective based on his failure to raise an ineffective assistance of

////

////

1   counsel claim on appeal, and an alleged failure to submit reporter's transcripts from the Marsden[2]

2   hearings conducted at trial.

3                       A.   Last Reasoned State Court Decision

4           The last reasoned rejection of petitioner's claims is the decision of the Shasta

5   County Superior Court.  (LD F.)  Petitioner raised the instant three ineffective assistance of

6   counsel claims in the Shasta County Superior Court.  (LD E.)  The state court addressed these

7   claims as follows:

8               With regard to the search and seizure/suppression motion,
        Petitioner's claims as to both his trial attorney and his "second
9       attorney" must fail.  "It has long been the rule that absent a change
        in applicable law or facts, the court will not consider newly
10      presented grounds for relief which were known to the Petitioner at
        the time of a prior collateral attack on the judgment." (In re Drew
11      (1922) 188 Cal. 717.)  The rule was stated clearly in In re Connor
        (1940) 16 Cal.2d 701 at p. 705:  "In this state a defendant is not
12      permitted to try out his contentions piecemeal by successive
        proceedings attacking the validity of the judgment against him."  In
13      this case, Petitioner filed a Motion for New Trial based, among
        other issues, on the denial of the suppression motion, which was
14      rejected by the trial court.  Next, Petitioner raised the suppression
        motion issue in his appeal which was also rejected by the
15      California Court of Appeal.  Petitioner wants yet a third bite at the
        apple to which he is not entitled, through a Writ of Habeas Corpus.

16
            With regard to his appellate attorney's performance, Petitioner's
17      statement that "he failed to expand the record" to include the
        Marsden hearings and address ". . . perhaps matters outside the
18      record" is vague and unsupported by Petitioner's application.
        Petitioner never identifies what the "matters outside the record"
19      are, and he is erroneous as to the Marsden issue.  Contrary to his
        assertions, the Marsden hearing transcripts were included in the
20      record, as evidenced by a letter dated April 8, 2008, from
        Petitioner's appellate attorney to Petitioner which states, in part:

21
            Upon completing my review of the transcripts,
22          particularly the Marsden transcripts I can clearly see
            how the trial court dealt with the Hankins' issue.
23          The Court of Appeal also reviews (sic) the Marsden
            transcripts."  (Please refer to Petitioner's Exhibit "I"
24          of his Writ of Habeas Corpus.)

25
_____

26      [2]  People v. Marsden, 2 Cal. 3d 118 (1970).

                                    8

Further, in a letter dated April 16, 2008, from Petitioner's appellate attorney to Petitioner, his attorney stated, "I have explained to you why, in my judgment, the IAC issue lacks merit. I just think it is an uphill battle. . .".  (Please refer to Petitioner's Exhibit I of his Writ of Habeas Corpus.)

Other than stating he disagrees with the appellate court findings and his belief that his appellate attorney was ineffective, Petitioner provides no substantial evidence in which to make a prima facie case for relief.

The issue of ineffective assistance of counsel was directly addressed by the California Supreme Court for the purposes of Habeas Corpus in *People v. Karis* (1988) 46 Cal.3d 612, at p. 657. The court stated a petitioner must show counsel's performance "fell below an objective standard of reasonableness . . . under prevailing professional norms."  Then, the petitioner is required to demonstrate a "reasonable probability exists that a more favorable outcome would have been reached absent the deficient performance." (*In re Codero* (1988) 46 Cal.3d 161 at p. 180.) Petitioner is simply restating facts that have already been litigated, and seeking to add another ineffective assistance claim against his appellate attorney because he thinks it will help achieve the outcome he desires.  This is not an appropriate basis for a Writ of Habeas Corpus.

For the foregoing reasons, Petitioner's Writ of Habeas Corpus is DENIED.

(In re Michael Wanless on Habeas Corpus, LD F.)

B. Legal Standards

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

1    Second, a petitioner must establish that he was prejudiced by counsel's deficient

2  performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

3  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

4  been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

5  confidence in the outcome."  Id.; see also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

6  F.3d 972, 981 (9th Cir. 2000).  The court need not address both components if petitioner makes

7  an insufficient showing on one.  Strickland, 466 U.S. at 697.  As both prongs of the Strickland

8  test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires

9  that an ineffective assistance claim be denied.  See id., 466 U.S. at 697 (no need to address

10  deficiency of performance if prejudice is examined first and found lacking); Rios v. Rocha, 299

11  F.3d 796, 805 (9th Cir. 2002) ("[f]ailure to satisfy either prong of the Strickland test obviates the

12  need to consider the other").

13    In other words, a reviewing court is not required to address the two parts of the

14  Strickland test in its ruling.  See Strickland, at 697.  As the Court stated in Strickland:

15    In particular, a court need not determine whether counsel's
      performance was deficient before examining the prejudice suffered
16    by the defendant as a result of the alleged deficiencies.  The object
      of an ineffectiveness claim is not to grade counsel's performance.
17    If it is easier to dispose of an ineffectiveness claim on the ground
      of lack of sufficient prejudice, which we expect will often be so,
18    that course should be followed.  Courts should strive to ensure that
      ineffectiveness claims not become so burdensome to defense
19    counsel that the entire criminal justice system suffers as a result.

20  Id.  "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the

21  principal allegation of ineffectiveness, [petitioner] must also prove that his Fourth Amendment

22  claim is meritorious and that there is a reasonable probability that the verdict would have been

23  different absent the excludable evidence in order to demonstrate actual prejudice."  Kimmelman

24  v. Morrison, 477 U.S. 365, 375 (1986).

25    In Harrington, the Supreme Court emphasized the application of Strickland to

26  ineffective assistance of counsel claims and its relationship to § 2254(d)'s deferential standard of

10

review. Id., 131 S. Ct. at 770.  "The pivotal question is whether the state court's application of

the *Strickland* standard was unreasonable[,]," which is a different question from "asking whether

defense counsel's performance fell below *Strickland's* standard."  Harrington, 131 S. Ct. at 785.

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult.  The
> standards created by *Strickland* and § 2254(d) are both "highly
> deferential," . . . and when the two apply in tandem, review is
> "doubly" so.  The *Strickland* standard is a general one, so the range
> of reasonable applications is substantial.  Federal habeas courts
> must guard against the danger of equating unreasonableness under
> *Strickland* with unreasonableness under § 2254(d).  When
> § 2254(d) applies, the question is not whether counsel's actions
> were reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied *Strickland's* deferential standard.

Harrington, 131 S. Ct. at 788 (citations omitted).

In assessing an ineffective assistance of counsel claim "[t]here is a strong

presumption that counsel's performance falls within the wide range of professional assistance."

Kimmelman, 477 U.S. at 381 (citation omitted).  Additionally, there is a strong presumption that

counsel "exercised acceptable professional judgment in all significant decisions made."  Hughes

v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

C.  Analysis

i.  Trial Counsel

Petitioner argues that trial counsel failed to conduct a reasonable pretrial

investigation, resulting in inadequate representation at the hearing on petitioner's motion to

suppress.  Petitioner contends that trial counsel should have discovered impeachment evidence

such as reports, eyewitnesses, and radio transmissions.  Petitioner contends that this

impeachment evidence would have shown that the parole agents and the Redding Police

Department used the syringe as an excuse to justify the search of petitioner.  Petitioner also

argues that the trial judge rushed the hearing on the motion to suppress in order to seat the jury.

At the hearing on the motion to suppress, Parole Agent Welch testified that

because there were four people in the room, but only two agents, "it was a matter of officer safety, and [Welch] didn't know the two other guys in the room." (RT 40.)  Agent Welch stated that petitioner "immediately got up when [Welch] entered the room and wanted to leave and said that he was a prior parolee and that [Welch] knew him, and [Welch] hadn't a clue who he was, so [Welch] asked him for his name and ID." (Id.)  Welch testified that petitioner "seemed fairly nervous, and he appeared to be the only one that was." (Id.)  Welch told petitioner he must remain until the agents identified him, and petitioner "became upset, and then he started becoming pretty active with his hands, sticking them in his pockets, rummaging them through a jacket that he had, and just doing a lot of furtive movements." (RT 41.)  Welch testified that he had to advise petitioner more than five times to take petitioner's hands out of his pockets. (RT 42.)  At one point, petitioner told Welch that petitioner "had a large knife in his pocket." (RT 42.)  Welch unholstered his firearm and told petitioner to remove his hand from his pocket without the weapon, but petitioner removed his hand holding a folded knife with brass ends. (RT 43.)  Petitioner then brought Welch the knife, petitioner's identification, and a check and W-2 form. (RT 44.)  Petitioner went back and sat on the bed, but continued to "shuffle with his jacket, with his hands, and putting them out of sight in the pockets of the jacket." (RT 44.)  Shortly after petitioner identified himself, Welch had Agent Day contact the Redding Police Department and the Sheriff's Department. (RT 44.)  When the Redding Police Department arrived, "all the defendants were placed in handcuffs for officer safety, and then they were interviewed and identified." (RT 46.)  After petitioner was removed and placed in handcuffs, Welch went to the area where petitioner was seated "and immediately observed a hypodermic syringe laying on the carpet between the bed and the little nightstand that was between the bed and the wall." (RT 47.)  Welch confirmed that no inhabitants of the room, other than petitioner, were located in that area during the time Welch was present. (RT 47.)

Welch testified that there were various factors that caused him to detain petitioner: petitioner's demeanor, including his jumping up and making a rush for the door, telling Welch he

1  was no longer on parole and wanted out of there; petitioner's actions of putting his hands in and

2  out of his pockets, and disobeying Welch's instructions; petitioner telling Welch he had a

3  weapon; and, after producing the weapon, petitioner's continued furtive movements with his

4  hands.  (RT 52.)  Ultimately, petitioner was arrested for possession of the syringe.  (RT 52.)

5          Parole Agent Day confirmed that petitioner attempted to leave the room when the

6  agents arrived, and that Ms. Day did not recognize petitioner stating, "[w]e have a lot of

7  parolees."  (RT 105.)  Ms. Day testified that it was standard policy that during a possible arrest,

8  "that for the safety of the agents we are going to secure everybody, make them sit down and get

9  identification and get backup rolling."  (RT 108.)  Ms. Day confirmed that petitioner kept getting

10  up despite Welch's instructions to stay seated, and was making furtive movements with his

11  hands.  (RT 110, 113.)

12          In ruling on the motion to suppress, the judge noted that the motion "turned out to

13  be less of a close case than initially [he] thought it might be when [he] read the briefs, but after

14  hearing the testimony of the witnesses this morning, this motion needs to be and is hereby

15  denied."  (RT 143.)  The judge found the agents' conduct to be reasonable, even in the absence of

16  evidence of a robbery at Tri Counties Bank or that petitioner was a suspect or a person of

17  interest.  (RT 144.)  If only Hankins and his wife had been present, the judge doubted that backup

18  would have been called at all.  Because there were two unknown males present, it would be

19  inappropriate, in hindsight, to find that one of those males should have been released.  (RT 144.)

20  After evaluating the potential threats the two unknown males presented to the agents, the court

21  stated that "it's very reasonable for these officers to protect their own safety to require the people

22  for a very limited detention to wait until they have backup, . . . and the length of this detention . .

23  . could have been as short as 15 minutes based on the evidence we have and no longer than 25

24  minutes."  (RT 145.)

25          [T]he fact that [petitioner] was not on parole doesn't change any of
           that, and the fact that [petitioner] identified himself doesn't change
26          it, but the fact that he very quickly, upon the arrival of the officers

1
    or agents at the scene demonstrated a rush or an anxiety to leave
2
    the premises, an unwillingness to comply with reasonable direction
    and demands of the . . . agent when everyone else in the room was
3
    complying suggests that [petitioner] had some reason not to
    comply, and all the possible reasons either put the officers at risk
4
    or evidenced the commission of a crime or the possession of
    unlawful contraband materials, and so my view is the officers acted
5
    reasonably. . . .  The detention was not prolonged.

6 (RT 146.)  The judge denied the motion to suppress for the reasons stated by the judge and by the

7 prosecutor.  (RT 146.)

8            After an independent review of the record, this court concludes that the state

9 courts' rejection of petitioner's claim of ineffective assistance of trial counsel is not contrary to

10 or an unreasonable application of federal law and should not be set aside.  The record

11 demonstrates that the trial court was concerned with the agents' safety.  None of the steps

12 petitioner suggests trial counsel should have taken demonstrate that the agents' concern for their

13 safety was not reasonable.  Even if one of the parole agents recognized or knew petitioner,

14 petitioner's actions at the crime scene, trying to leave, not following the agent's instructions,

15 moving petitioner's hands in a furtive fashion, and ultimately producing a knife, were sufficient

16 to demonstrate a concern for the agents' safety.  Petitioner has failed to produce facts or evidence

17 demonstrating that had the trial court been presented with those facts or evidence, that the trial

18 court would have granted the motion to suppress.

19            In his reply, petitioner contends that the parole agents did not come to the motel

20 room to conduct a drug raid, that "they didn't even come to arrest J. Hankins, only the possibility

21 existed." (Dkt. No. 18 at 4.)  Petitioner argues that the parole agents didn't have any information

22 as to sales of drugs or criminal activity in the motel room, they had no reason to believe

23 petitioner was involved in any criminal activity, and that petitioner "did nothing in any way that

24 threatened the Agents' safety in any way other than standing and heading towards [them] saying

25 he was just leaving when the door opened." (Dkt. No. 18 at 4.)  Petitioner provides a partial copy

26 of the preliminary hearing transcript, and a copy of what appears to be a partial transcript of the

1   call log between Shascom and an unidentified officer.  (Dkt. No. 18 at 8-15.)

2            However, some of petitioner's statements in his reply are belied by the record, as

3   well as petitioner's own petition.  For example, in the petition, petitioner states Hankins "was

4   being arrested for a dirty drug test."  (Dkt. No. 1 at 13.)  Petitioner argues that Hankins and his

5   wife were "key witnesses, . . . [and] "amplified by the fact the parole agents even had multiple

6   sources of information about Hankins and his wife's drug usage, and perhaps even sales."  (Dkt.

7   No. 1 at 13, citing RT 55.)  The record demonstrates that parole agents were looking for parolee

8   Hankins, who previously tested positive for methamphetamine use.  During the preliminary

9   hearing, Welch testified that Hankins was "out of compliance with the conditions of parole and

10  the possibility existed that [Welch] would be arresting him."  (CT 11.)  But in the context of the

11  entire incident, it appears Welch's reference to "possibility" relates more to whether the agents

12  found Hankins as opposed to whether they might not arrest Hankins if they found him.  In any

13  event, it is a distinction without a difference, because agents Welch and Day had probable cause

14  to arrest Hankins, and to search the motel room he occupied, because of Hankins' parole status

15  and the fact that he had recently tested positive for methamphetamine.  Ultimately, Hankins was

16  arrested.

17           Both Agents Welch and Day testified as to petitioner's suspicious actions taken in

18  their presence, demonstrating cause for concern for the officers' safety.  Petitioner's self-serving

19  efforts to re-characterize his actions in their presence does not alter the agents' perceptions at the

20  time, or refute an objective view that petitioner's efforts to leave the room, and his refusal to

21  follow the agent's instructions, warranted a concern for the agents' safety.

22           Whether or not parole agents Day or Welch knew petitioner, or knew whether or

23  not petitioner was or was not on parole, it is undisputed that petitioner was found in the company

24  of Hankins, who was on parole, and had tested positive for methamphetamine use.  Petitioner's

25  presence in the hotel room with Hankins, and petitioner's subsequent actions in the agents'

26  presence, warranted the detention and arrest of petitioner based on the concern for the agents'

1    safety.  Petitioner has not presented a declaration by Hankins' wife or the other unidentified man

2    in the motel room.  Petitioner must present evidence, not merely speculate as to what testimony a

3    witness would offer.  See Davis v. Woodford, 384 F.3d 628 (9th Cir. 2004) (in order to

4    demonstrate prejudice under Strickland, "specific . . . evidence" is required).  Petitioner provided

5    a copy of Hankins' January 23, 2008 statement that the syringe was his, and that Hankins advised

6    Welch that it was his.  (Dkt. No. 1 at 142.)  However, petitioner failed to demonstrate that the

7    trial court would have found Hankins more credible than Welch, or that the ownership of the

8    syringe would have altered the evaluation of the detention based on officer safety.

9             For all of the above reasons, petitioner has failed to demonstrate that but for trial

10   counsel's failure to properly prepare for the motion to suppress hearing, or to investigate further,

11   or to take other suggested steps, the trial court would have granted the motion to suppress.  In

12   other words, petitioner cannot demonstrate prejudice under Strickland.  The facts adduced at the

13   motion to suppress hearing justified the detention of petitioner for the agents' safety, as found by

14   the Court of Appeal.  The Court of Appeal properly evaluated the potential threat that petitioner

15   and the other unidentified man in the company of Hankins presented to the parole agents.  The

16   Shasta County Superior Court on habeas review properly found that petitioner's motion to

17   suppress lacked merit.  Petitioner has presented no facts or evidence demonstrating that had trial

18   counsel pursued other witnesses, or been better prepared to argue the motion to suppress, or

19   taken other, additional, steps, the motion to suppress would have been granted.  Therefore,

20   petitioner's ineffective assistance of trial counsel claim should be denied.

21             ii.  Defense Counsel - Motion for New Trial

22             Petitioner's ineffective assistance of counsel claim against the attorney appointed

23   to represent petitioner during the motion for new trial fails for the same reasons as petitioner's

24   claim against trial counsel.  Petitioner concedes that defense counsel sought parole records, and

25   at least one witness statement, but states these efforts were "too little, too late," and faults

26   defense counsel for not expending enough hours on the motion for new trial.  (Dkt. No. 1 at 17-

1   18.)  Petitioner does not explain what additional steps defense counsel should have taken.

2          However, the basis for the finding that the detention was appropriate was based on

3   concerns for the agents' safety, specifically, petitioner's presence in the hotel room with Hankins,

4   as well as petitioner's actions in the presence of the parole agents.  Petitioner has presented no

5   additional facts or evidence demonstrating that the safety concerns were unfounded.  As noted

6   above, none of the additional evidence suggested by petitioner would refute the concerns for the

7   agents' safety during the parole search of Hankins' room.  Even if Agent Day knew petitioner at

8   one time, it is not clear she would have remembered petitioner in a different setting, or that such

9   knowledge would have ameliorated the safety concerns of her or Agent Welch, given the

10  presence of a second unknown male or petitioner's furtive actions.  In any event, petitioner has

11  failed to demonstrate that had defense counsel performed more diligently, or investigated more,

12  that the trial court would have granted the motion for new trial.  Thus, petitioner cannot meet the

13  prejudice prong of Strickland, and this claim should also be denied.

14                  iii.  Appellate Counsel

15          Petitioner argues that his appellate counsel was ineffective for failing to raise an

16  ineffective assistance of counsel claim.  Petitioner argues that appellate counsel "made a

17  tactically incorrect decision by failing to expand the record to include the Marsden evidence, and

18  then use this evidence in combination with the Motion for a New Trial, and perhaps matters

19  outside the record to file an IAC claim on appeal."  (Dkt. No. 1 at 18.)  Petitioner contends that

20  the transcripts petitioner received from the attorney did not include any Marsden transcripts.  (Id.

21  at 19.)

22          The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

23  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

24  However, an indigent defendant "does not have a constitutional right to compel appointed

25  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

26  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

1    (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

2    ability of counsel to present the client's case in accord with counsel's professional evaluation

3    would be "seriously undermined."  Id.  There is no obligation to raise meritless arguments on a

4    client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring showing of deficient performance

5    and prejudice).  In order to demonstrate prejudice here, petitioner must demonstrate that, but for

6    counsel's errors, he probably would have prevailed on appeal.  Miller, 882 F.2d at 1434, n.9.

7            On January 15, 2008, appellate counsel sought copies of the transcripts from the

8    Marsden hearings.  (LD K.)  The Third District Court of Appeal granted the request on January

9    25, 2008, and directed the clerk to send appellate counsel the sealed material in a confidential

10   envelope.  (LD K.)  On appeal, appellate counsel raised four issues:  (1) the trial court committed

11   reversible error when it denied petitioner's motion to suppress; (2) various claims of alleged

12   prosecutorial misconduct; (3) alleged sentencing error under California's Three Strikes Law; and

13   (4) an Eighth Amendment challenge to the sentence imposed.  (LD A, *passim*.)

14           Moreover, appellate counsel reviewed the Marsden hearing transcripts.  With the

15   petition, petitioner provided copies of appellate counsel's letters.  On January 3, 2008, appellate

16   counsel noted that he reviewed the motion for new trial, including the alleged ineffective

17   assistance of trial counsel.  (Dkt. No. 1 at 276.)  On April 8, 2008, appellate counsel noted he

18   completed review of the transcripts, "particularly the *Marsden* transcripts," and advised

19   petitioner that the "Court of Appeals also reviews the *Marsden* transcripts."  (Dkt. No. 1 at 273.)

20   Appellate counsel noted it was unclear whether Hankins would cooperate, but stated:

21           As we discussed previously, prejudice would be difficult even if
             [Hankins] cooperates (Fifth Amendment concerns) because of
22           [Hankins'] lack of credibility, the observations made by the two
             agents, and the items found in your waistband.  I am just not seeing
23           this as a good issue.  On the other hand, I think [petitioner] [has]
             good potential issues regarding the search and prosecutorial
24           misconduct, in his examination and closing argument, and the
             monetary orders.

25

26   (Id.)  On April 16, 2008 letter, appellate counsel responded to petitioner's correspondence, in

pertinent part, as follows:

> What I was trying to explain is that the Court of Appeal has access to the trial transcripts and will see how the trial court dealt with the Hankins' issue.  This is not something new and I strongly believe the Court of Appeal will analyze the issue the same way the trial court did in [petitioner's] <u>Marsden</u> hearings.  Further, [petitioner] should be aware the United States Supreme Court has held that appointed appellate counsel has no duty to raise every issue requested by [a criminal defendant].  [Citations omitted.]  I have explained to you why, in my judgment, the IAC issue lacks merit.  Nevertheless, if you want me to pursue this issue further, I can write to Hankins when I know where he is housed.  If he responds, we can go from there.  I just think it[']s an uphill battle and a habeas petition can be filed after the opening brief if I explain the difficulty I had in locating him.  As I advised you, I think you have other meritorious issues.

(Dkt. No. 1 at 272.)  In a November 12, 2008 letter, appellate counsel reminded petitioner that

the issue of the denial of the motion to suppress was raised and preserved.  (Dkt. No. 1 at 269.)

On July 3, 2008, appellate counsel responded to petitioner's correspondence by stating:

> The record shows that after Welch entered the room, [petitioner] and others were told you had to sit down and could not leave until the situation was controlled.  (1 RT 230-233.)  When he asked [petitioner] for identification, [petitioner] kept on putting [petitioner's] hands in [petitioner's] pockets.  After [petitioner] handed him an unopened knife from [petitioner's] jacket pocket, the Redding Police Department was called for backup.  (1 RT 234-235.)  Regardless of [petitioner's] parole or probation status, or Welch's knowledge of same, the argument remains the same.  In Argument I of the opening and reply briefs, the contention is that the motion to suppress was erroneously denied because the initial detention was unlawful, and the detention was unduly prolonged.
>
> In my professional opinion, I feel the denial of the motion to suppress and prosecutorial misconduct issues are [petitioner's] strongest arguments.  The Attorney General, in the respondent's brief, argued predictably that the motion to suppress was properly denied and there was no prosecutorial misconduct.  Hopefully, the Court of Appeal will adopt our arguments.  If they do not and we lose, I will file a petition for review with the California Supreme Court, wherein I will federalize the issues for purposes of further review.

(Dkt. No. 1 at 270.)  On June 18, 2008, appellate counsel wrote petitioner to advise him that the

respondent's brief "made numerous mentions about the syringe, although [petitioner is] right that

the most important thing to remember is [petitioner was] not charged with any charges related to possession of the syringe."  (Dkt. No. 1 at 271.)  In appellate counsel's February 4, 2009 letter, counsel informed petitioner that the Court of Appeal had affirmed petitioner's conviction and sentence, noting that, "[o]n the improper search issue, the big emphasis was, as I predicted, based on the catch-all "officer safety" reasoning."  (Dkt. No. 1 at 268.)

These letters demonstrate that appellate counsel chose not to file an ineffective assistance of counsel claim based on his review of the trial transcripts, including the transcripts from the Marsden hearings, and briefing on the motion for new trial.  Appellate counsel informed petitioner that counsel chose not to raise the ineffective assistance of counsel claim because the ineffective assistance of counsel claim "lacks merit" (dkt. no. 1 at 272), and counsel believed petitioner's other claims were stronger.

After carefully reviewing the record, the undersigned finds that appellate counsel's decision not to raise the claims suggested by petitioner was not ineffective assistance.  As discussed above, this court finds that petitioner's arguments concerning the denial of the motion to suppress lack merit.  Thus, appellate counsel's failure to raise meritless or weak issues does not constitute ineffective assistance.  After conducting an AEDPA review, the undersigned recommends that petitioner's alleged ineffective assistance of appellate counsel claim also be denied.

iv.  Superior Court Order on Habeas Review

Petitioner also contends that the Shasta County Superior Court's order on habeas review is fatally flawed because the court relied on "two ancient cases," and the court's statement that petitioner does not get a "third bite at the apple" ignores petitioner's legal right to seek habeas relief.  (Dkt. No. 1 at 7-8.)  Petitioner is correct that he was permitted, under the law, to raise ineffective assistance of counsel claims in his habeas petition.  However, the superior court correctly evaluated the issue of the ruling on the motion to suppress, because such evaluation was necessary to determine whether petitioner demonstrated prejudice under Strickland, as explained

above.  While the superior court might have articulated the evaluation of petitioner's claims in a

more tempered manner, and cited more recent legal authority, the denial of petitioner's claims

was not in error.  The last paragraph of the superior court's order cites to People v. Karis, 46

Cal.3d at 657, but essentially tracks the language and standards set forth in Strickland.  At

bottom, the superior court held that petitioner failed to present any new facts or evidence to

demonstrate that the motion to suppress would have been granted, which is how the Strickland

prejudice test is applied in this context.  Thus, the state court's rejection of petitioner's

ineffective assistance of counsel claims was neither contrary to, nor an unreasonable application

of, controlling principles of United States Supreme Court precedent.

VII.  Alleged Cumulative Error

Finally, petitioner claims that the cumulative effect of the ineffective assistance of

counsel errors alleged herein constitute a denial of due process.

The Ninth Circuit has concluded that under clearly established United States

Supreme Court precedent the combined effect of multiple trial errors may give rise to a due

process violation if it renders a trial fundamentally unfair, even where each error considered

individually would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007)

(citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974), and Chambers v. Mississippi, 410

U.S. 284, 290 (1973)).  "The fundamental question in determining whether the combined effect

of trial errors violated a defendant's due process rights is whether the errors rendered the criminal

defense 'far less persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and

injurious effect or influence' on the jury's verdict."  Parle, 505 F.3d at 927 (quoting Brecht v.

Abrahamson, 507 U.S. 619, 637 (1993)).  See also Hein v. Sullivan, 601 F.3d 897, 916 (9th Cir.

2010) (same).

This court has addressed each of petitioner's claims and has concluded that no

error of constitutional magnitude occurred.  This court also concludes that the alleged errors,

even when considered together, did not render petitioner's defense "far less persuasive," nor did

1   they have a "substantial and injurious effect or influence on the jury's verdict."  Accordingly,

2   petitioner is not entitled to relief on his claim of cumulative error.

3   VIII.  Conclusion

4           Accordingly, for all of the reasons discussed above, IT IS HEREBY

5   RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

6           These findings and recommendations are submitted to the United States District

7   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

8   one days after being served with these findings and recommendations, any party may file written

9   objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

11  objections, he shall also address whether a certificate of appealability should issue and, if so, why

12  and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

13  the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

14  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

15  service of the objections.  The parties are advised that failure to file objections within the

16  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

17  F.2d 1153 (9th Cir. 1991).

18  DATED:  December 13, 2011

19

20

21  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

22  wanl2243.157

23

24

25

26